**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sherri Jo Gallagher,<br><br>           Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-23-00833-PHX-GMS<br><br>**ORDER** |

Plaintiff Sherri Jo Gallagher seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under 42 U.S.C §§ 416(i) and 423(d) of the Social Security Act, 42 U.S.C. §§ 301–2113.  Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision is affirmed.

**I.     BACKGROUND**

Plaintiff was born in December 1983. (Doc. 6-3 at 58.)  She has at least a high school education.  (*Id.*)  Her previous job history includes communications director, parachuter, vet technician, office assistant, receptionist, property management, and secretarial duties. (Docs. 6-3 at 49; 6-4 at 40; 6-7 at 7.)  Plaintiff's alleged impairments include obesity, migraine headaches, cervical radiculopathy, lumbar radiculopathy occipital neuralgia, post-traumatic stress disorder, anxiety, depression, degenerative joint

disease in multiple locations, lumbar degenerative disc disease and sprain, cervical degenerative disc disease, Hashimoto disease, gout, and asthma. (Doc. 6-3 at 49, 53–54.)

On April 27, 2020, Plaintiff applied for disability and disability insurance benefits, alleging disability beginning December 30, 2018. (*Id.* at 46.) The claim was denied initially on July 29, 2020, and upon reconsideration on January 27, 2021. (*Id.*) On November 2, 2022, she appeared with her attorney and testified at a telephonic hearing before the ALJ. (*Id.*) A vocational expert also testified. (*Id.*) On December 20, 2022, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 59.) The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. (*Id.* at 2.) On May 12, 2023, Plaintiff sought review by this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "[O]nly issues [that] are argued specifically and distinctly in a party's opening brief" are reviewed. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id.*

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005)). It is "relevant evidence [that] a reasonable [person] might accept as adequate to support a conclusion" considering the record as a whole. *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not

affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Generally, when the evidence is susceptible to more than one rational interpretation, courts "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is 'highly deferential.'" *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).

Social Security Rulings ("SSRs") do not carry the force of law, but they reflect the official interpretation of the Social Security Administration and are binding on ALJs. *Molina*, 674 F.3d at 1113 n. 5. They are entitled to some deference to the extent they are consistent with the Social Security Act and regulations. *Id*.

## III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).[1]

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. (Doc. 6-3 at 48.) Plaintiff engaged in substantial gainful activity during the following periods: January 2019 through June 2020 and August 2021 through March 2022. (*Id.* at 49.) At step two, the ALJ found that

---

[1] At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404, § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *See id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

Plaintiff has the following severe impairments: obesity, migraine headaches, without status migrainosus, not intractable, unspecified migraine type, cervical radiculopathy, lumbar radiculopathy occipital neuralgia, post-traumatic stress disorder, anxiety, depression, degenerative joint disease in multiple locations (knees, feet), lumbar degenerative disc disease and sprain, cervical degenerative disc disease, Hashimoto disease, gout, and asthma. (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc 6-3 at 50.) At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except with the following additional limitations: in an 8-hour workday, with normal breaks, she can occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds. (Doc. 6-3 at 52.) Plaintiff can stand and/or walk about 6 hours total and sit for a total of about 6 hours. (*Id.*) Plaintiff must work in an environment where she has no more than frequent exposure to fumes, odor, dusts, gases, poor ventilation and other pulmonary irritants, as well as hazards like moving dangerous machinery and unprotected heights. (*Id.*) Despite Plaintiff's mental health, medication side effects, pain, and other symptoms and limitations, she retains the ability to understand, remember and apply information regarding simple, detailed, and complex instructions. (*Id.*) Plaintiff may be absent up to one day per month to deal with her symptoms and limitations. (*Id.*) Plaintiff must work in an environment with only occasional interaction with others. (*Id.*) Plaintiff retains the ability to adjust to occasional work related changes. (*Id.*) The ALJ further found that Plaintiff is unable to perform any of her past relevant work. (*Id.* at 57.) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled, whether or not she has transferable job skills. (*Id.* at 58.) At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 58.)

## IV. ANALYSIS

### A. The ALJ Did Not Err in Determining Plaintiff's Residual Functional Capacity.

A Residual Functional Capacity ("RFC") finding involves a detailed assessment of how a claimant's medical impairments affect her ability to work. In determining a claimant's residual functional capacity, the ALJ "must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of [] symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins*, 466 F.3d at 883 (quoting SSR 96–8p, 1996 WL 374184, *5 (July 2, 1996)). The ALJ must consider the combined effect of multiple conditions, including those that are not severe. *See* 20 C.F.R. § 404.1545(a)(2). A plaintiff's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th Cir. 1985)).

The ALJ determined that Plaintiff "has the residual capacity to perform light work" with limitations. (Doc. 6-3 at 52.) Plaintiff argues that the ALJ committed legal error in considering Plaintiff's RFC because the ALJ (1) failed to discuss and properly assess Plaintiff's migraine headaches; (2) neglected to consider Plaintiff's gout or foot fractures; and (3) undermined the severeness of Plaintiff's hemorrhoids, constipation, abnormal digestive system, gastroesophageal reflux disease ("GERD"), and rectocele. (Doc. 8 at 7-16.)

First, the ALJ's properly assessed Plaintiff's migraine headaches. The ALJ noted that Plaintiff's migraine headaches are a severe impairment. (Doc. 6-3 at 49.) The ALJ considered Plaintiff's testimony that the migraines were caused by a 2014 car accident and acknowledged the treatment Plaintiff received. (*Id.* at 53.) The medical evidence, however, reflected that Plaintiff "was treated with Botox injections for migraine without status migrainosus, not intractable, unspecified migraine type . . . ." (*Id.*) (citing Doc. 7-1 at 197.) In other words, Plaintiff's migraines did not last more than 72

hours and were treatable. *See What Is Status Migrainosus*, American Migraine Foundation (Mar. 31, 2022), https://americanmigrainefoundation.org/resource-library/what-is-status-migrainosus/ ("Status migrainosus is a headache that doesn't respond to usual treatment or lasts longer than 72 hours."). Furthermore, Advanced Pain Management noted that "Patient is able to function with pain medications and brings pain to a tolerable level without significant side effects." (Doc. 6-3 at 53; Doc. 7-1 at 190.) The ALJ thus concluded that Plaintiff's "treatment has been essentially routine and conservative in nature." (Doc. 6-3 at 53.)

Second, the ALJ considered Plaintiff's gout and foot fractures in the RFC. The ALJ relied on treatment notes from Longleaf Wellness that documented Plaintiff's idiopathic gout as "stable." (*Id.*) (citing Doc. 6-8 at 14.) The ALJ also reviewed multiple physical examinations that were "largely normal . . . inlcud[ing] normal gait, strength, sensation[,] and reflexes." (Doc. 6-3 at 54.) The ALJ then concluded that Plaintiff's "gout [is] controlled on medications." (*Id.* at 55.)

Third, the ALJ relied on medical evidence to conclude that Plaintiff's "alleged disability in part due to hemorrhoids, constipation without outlet dysfunction, an abnormal digestive system, gastroesophageal reflux disease (GERD) and rectocele" was not severe. (*Id.* at 50.) Treatment notes at Arizona Digestive Health revealed that an "ileocolonoscopy (08/2021) [showed] internal hemorrhoids but was otherwise normal . . . ." (Doc. 7-2 at 42.) Moreover, a computed tomography scan (05/2022) showed "entirely normal" results. (*Id.*) Based on the medical evidence, the ALJ concluded that Plaintiff's "impairments do not cause more than minimal functional limitations." (Doc. 6-3 at 50.)

The ALJ provided a narrative description of how the evidence supports each conclusion in the RFC assessment and explained any inconsistencies or ambiguities in the evidence. *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ incorporated medical assessments that she found credible, including treatment notes from Advanced Pain Management and Arizona Digestive Health. Despite Plaintiff's argument to the contrary, the ALJ's assessment finds substantial support in the medical opinion evidence.

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [] benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Thus, the ALJ did not err in determining Plaintiff's residual functional capacity.

### B. The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Symptom Testimony.

If a claimant's statements about pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider all of the evidence in the case record, including any statement by the claimant and other persons, concerning the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *4 (March 16, 2016), *amended by* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) [*hereinafter* SSR 16-3p]. Then the ALJ must make a finding on the intensity, persistence, and limiting effects of claimant's symptoms. *Id*.

In evaluating the intensity, persistence, and limiting effects of a Claimant's symptoms, the ALJ will consider a set of seven factors in addition to all the existing evidence:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or

|   |   |
|---|---|
|   | sleeping on a board); and |
| 7. | Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. |

*Id*. at *7–8. The ALJ will only discuss those factors made relevant by the evidence. *Id.* at *8. A claimant's statements about his own symptoms will weigh in this analysis based on their consistency with the record: statements consistent with the record indicate that the claimant's symptoms are more likely to reduce capacity to perform work-related activities, while inconsistent statements indicate the opposite. *Id*.

First, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 6-3 at 53.) Second, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of symptoms to be inconsistent with evidence in the record. (*Id.*) The ALJ explained that medical evidence showed that Plaintiff's alleged disabilities were "stable," "normal," "mild," "not mention[ed]," or "revealed unremarkable findings." (*Id.* at 53–55.) Also, Plaintiff's level of daily activity was inconsistent with her statements. (*Id.* at 55.) "The claimant testified she adopted a child from China in 2018. In June 2018, the evidence shows the claimant was going to adopt a child and was going on a 2-day river trip." (*Id.*) On June 5, 2020, Plaintiff's sister submitted a Third Party Function Report highlighting that Plaintiff can drive, read, teach, shop, volunteer at church, prepare simple meals, do laundry, play board games, garden, and care for herself, child, and small pets. (*Id.*) Moreover, Plaintiff worked over the substantial gainful activity ("SGA") limit during the alleged disability period. (*Id.* at 54–55.) Plaintiff "worked SGA from January 2019 through June 2020 and again from August 2021 through March 2022." (*Id.* at 55.)

Thus, the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) ("[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.")).

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 21st day of June, 2024.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge